ANDREW L. PEPPER          5141-0
NICOLE K. HUDSPETH        11079-0
1088 Bishop Street, Suite 4100
Honolulu, Hawaiʻi  96813
Telephone:  (808) 526-0404
Facsimile:   (808) 744-7972
Andrew.Pepper@jacksonlewis.com
Nicole.Hudspeth@jacksonlewis.com

Attorneys for Plaintiff
Homebridge Financial Services, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| HOMEBRIDGE FINANCIAL SERVICES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> JASON MARTINSON; DAWN ROBINSON NAYA. <br><br> Defendants. | CIVIL NO. _____ <br><br> VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES; VERIFICATION OF ROSE MARIE DAVID; SUMMONS |

## **VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff Homebridge Financial Services, Inc. ("Homebridge") brings suit against Defendants Jason Martinson and Dawn Robinson Naya, for injunctive relief and monetary damages as follows:

### **PARTIES**

1.      Plaintiff Homebridge Financial Services, Inc., and at all relevant times was, a corporation organized under the laws of New Jersey, with its principal place

of business in Iselin, Woodbridge Township, New Jersey.

2.      Defendant Jason Martinson ("Martinson" or "Defendant Martinson") is, and at all times relevant herein was, a citizen and resident of the State of Hawaii.

3.      Defendant Dawn Robinson Naya ("Naya" or "Defendant Naya") is, and at all relevant times, was a citizen and resident of the State of Hawaii.

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction of this action pursuant to the Defend Trade Secrets Act, 18 U.S.C. §1836(c) and 28 U.S.C. § 1331.  Further, this Court has an additional independent basis for original jurisdiction of this action pursuant to 28 U.S.C. § 1332 in that there is a complete diversity of citizenship between the parties and the amount in controversy exceeds the jurisdictional amount for diversity jurisdiction.  This Court also enjoys supplemental jurisdiction over all non-federal claims pursuant to 28 U.S.C. § 1367.

5.      Venue in this District is proper under 28 U.S.C. § 1391 as all, or substantially all, of the events or omissions giving rise to this Complaint occurred in this judicial district.

## INTRODUCTION

6.      This action is brought to remedy Defendants' disloyal and unlawful conduct in: taking, retaining and misappropriating Plaintiff's property, including

Plaintiff's confidential, proprietary, and trade secret information; attempting, while employed by Plaintiff, to divert employees and customers to Plaintiff's competitor, Loan Depot; misappropriating Plaintiff's property and confidential information, both prior to and after their abrupt resignations from Homebridge; and breaching their contractual agreements with and obligations to Homebridge.

7.      As of the filing of this Complaint, Defendants have breached contracts and misappropriated and converted, and continue to breach contracts and misappropriate and convert, Plaintiff's confidential and proprietary information, including trade secrets.  Plaintiff seeks remedies against Defendants, including injunctive and monetary relief, damages, lost profits, an accounting, forfeiture of illicit income and other relief.

## OUTLINE OF FACTS AND RELEVANT CONTRACTUAL PROVISIONS

8.      Homebridge hired Martinson on April 27, 2019, to serve as the Hawaii Regional Manager for Homebridge's Northwest Division.  This was the senior position for Homebridge in Hawaii and Martinson was the manager of the Homebridge Northwest Division's mortgage origination and loan market in Hawaii.

9.      Homebridge hired Naya on April 18, 2019, to serve as the Producing Area Manager for Homebridge.  This was the second most senior position for

Homebridge's Northwest Division in Hawaii and Naya served as Martinson's deputy manager for the mortgage origination and loan market in Honolulu, Hawaii.

10.     By virtue of their very senior management-level employment at Homebridge, Martinson and Naya were exposed to various customers and had and used that opportunity to develop relationships with various customers and employees who they were serving, servicing, and supervising, on behalf of Homebridge, within the fields of mortgage origination and lending.

11.     By virtue of their very senior management-level employment at Homebridge, Martinson and Naya were exposed to the employment relationships, including compensation plans, for all Homebridge Northwest Division employees in Hawaii that Martinson formerly supervised at HomeStreet Bank and were part of the acquisition of HomeStreet Bank's home loan centers.

12.     On the same day they were employed, Martinson and Naya each entered into a *Confidentiality, Non-Disclosure, and Non-Solicitation Agreement* with Homebridge.

13.     On May 17, 2019, in violation of his *Confidentiality, Non-Disclosure, and Non-Solicitation Agreement* with Homebridge, Martinson coordinated and facilitated a mass employee raid on Homebridge by a Homebridge competitor, *i.e.*, Loan Depot, by having Loan Depot conduct a job fair in Homebridge's Honolulu office, during which Martinson and Loan Depot solicited Homebridge's

4

employee's to quit their employment with Homebridge and become employees of Loan Depot.

14.     On August 8, 2019, Martinson announced that he would be resigning his employment with Homebridge and going to work for Homebridge's competitor, Loan Depot.

15.     On August 13, 2019, Naya announced that she would be resigning her employment with Homebridge and going to work for Homebridge's competitor, Loan Depot.

16.     In recognition of Martinson and Naya's talents in their profession, Martinson and Naya's unique skills in the area of mortgage originating and lending, out of concern that Martinson and Naya apparently intended to take Homebridge's vast proprietary and confidential information base to competitor Loan Depot, that Martinson and Naya's move to Loan Depot created the clear and inevitable threat of the transfer and misappropriation of Homebridge's trade secrets to Loan Depot in violation of Haw. Rev. Stat. Chapter 482B, and that Martinson and Naya would "raid" Homebridge's employee and customer base despite the fact that Martinson and Naya were contractually bound not to do so, Homebridge made Martinson and Naya counteroffers to remain as employees of Homebridge.

17.     Martinson and Naya each rebuffed the counteroffers and indicated that their decision to move to Loan Depot was firm and final, that they would not

reconsider their decision regardless of any counteroffer from Homebridge, and that they fully intended to compete with Homebridge as senior executives of Loan Depot.

18.     Just before their departure dates from employment with Homebridge, Martinson surreptitiously exported his business contact lists and customer confidential information (which was the proprietary business information and property of Homebridge) to his personal external email account at jaymart777@gmail.com.  Similarly, Naya surreptitiously exported her business contact lists to her personal email account at dawn.naya@gmail.com.

19.     Both before and after leaving their employment with Homebridge, both Martinson and Naya engaged in numerous, repeated, and successful solicitations of Homebridge's employees to quit employment with Homebridge and join them (*i.e.*, Martinson and Naya) as employees of Loan Depot, including but not limited to Clint Lacaden, Shane Irish, Jenna Lum, Randy Miller, Shana Antolin, Shirly Medeiros, Kim Kawachi, Lei Agpoon, and Sandy Rice.

20.     The information Martinson and Naya obtained and had access to while employed at Homebridge--including, but not limited to, confidential plans to compete with Loan Depot and confidential plans for Homebridge's business strategies in Hawaii---were considered and treated as confidential and proprietary by Homebridge and constituted Homebridge's proprietary trade secrets.  Moreover,

the confidential business plans and strategies regarding Hawaii were accessible only by a select number of Homebridge employees nationwide and only by Martinson and Naya in Hawaii.  Access to such confidential and proprietary information would be strategically and economically advantageous to any company or individual seeking to compete with Homebridge, such as Loan Depot. Martinson and Naya's intimate knowledge of such confidential and proprietary information is beneficial to them and Loan Depot, in competing with Homebridge.

21.     Martinson and Naya's current and threatened continuing violations of their legal and contractual obligations to Homebridge have caused and will continue to cause irreparable harm to Homebridge.

### Count I

### (Federal Defend Trade Secrets Act—18 U.S.C. § 1832, *et seq.*)

22.     Homebridge incorporates the averments contained in Paragraphs 1 through 21 above by reference as though fully set forth herein.

23.     The federal Defend Trade Secrets Act of 2016 ("DTSA") forbids threatened and actual misappropriation of trade secrets "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  *See* 18 U.S.C. § 1832, *et seq.*

24.     "Trade secrets" are broadly defined under the DTSA to include "all forms and types of financial, business, scientific, technical, economic or

engineering information" that derive independent economic value from not being generally known or readily accessible by the public using proper means and which the owner has taken reasonable steps to protect.  18 U.S.C. § 1839(3).

25.     During their employment with Homebridge, Martinson and Naya each had access to confidential and proprietary information that constituted Homebridge's trade secrets.  These trade secrets included, but were not limited to, mortgage origination and lending technical information (including mortgage product formulae, product composition, production processes, product and production data, and technical reports) as well as confidential and proprietary customer information, including but not limited to, mortgage loan pipeline reports that contained, inter alia, the name and address of Homebridge's borrowers, the status of their loans, the purpose of their loans, loan milestones, and the loan types.

26.     Upon information and belief, Defendants have shared this information with one another, employees of Loan Depot, Loan Depot *qua* Loan Depot, or have used this information to directly compete, both for their own benefit and for the benefit of Loan Depot, with Homebridge.

27.     Homebridge's trade secret information was related to multiple mortgage products or services used in, or intended for use in, interstate commerce.

28.     Except to the extent now improperly and illegally shared with Loan Depot by Martinson and Naya, this trade secret information:  (1) was and is not

known outside Homebridge; (2) was and is known only by Homebridge employees, including ex-employees Martinson and Naya; (3) was and is subject to reasonable measures to guard the secrecy of the information, including Homebridge's Confidentiality, Non-Disclosure, and Non-Solicitation Agreements; (4) is valuable; and (5) is difficult for others to properly acquire or duplicate independently.

29.     Martinson and Naya each knew that they had a duty, pursuant to the *Confidentiality, Non-Disclosure, and Non-Solicitation Agreements* and Homebridge's policies, to maintain the secrecy of Homebridge's confidential information and trade secrets.

30.     Martinson and Naya used this information to directly compete, on their own behalf and on behalf of Loan Depot, with Homebridge in the mortgage origination and loan markets.

31.     Martinson and Naya used this information without Homebridge's knowledge, consent, or authorization to benefit them and Loan Depot in a manner that will cause irreparable harm to Homebridge.

32.     Defendants' actions constitute actual and continuing misappropriation in violation of the DTSA.

33.     Homebridge has suffered damages and irreparable harm as a result of Defendants' breaches of the DTSA.

34.     WHEREFORE, Plaintiff Homebridge respectfully requests injunctive relief barring Defendants Martinson and Naya from continuing their wrongful actions, as well as an award of compensatory damages, and any other relief this Court deems appropriate.

## COUNT II

### (Hawaii Revised Statutes § 482B-2)

35.     Homebridge realleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 34 above.

36.     Hawaii Revised Statutes Chapter 482B provides injunctive and monetary relief for the actual or merely "*threatened*" misappropriation of trade secrets.  Under Haw. Rev. Stat. § 482B-2, a "trade secret" involves:

> [i]nformation, including a formula, pattern, compilation, program device, method, technique, or process that:
>
> (1)     Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (2)     Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

37.     In the present instance, Homebridge's methods of operation and/or the terms of its contracts with customers constitute "trade secrets" under Haw. Rev. Stat. § 482B, because they are a "compilation" of facts and data which include the identities, needs, and practices of Homebridge's mortgage lending customers.

38.     Homebridge's compiled customer information constitutes "trade secrets."

39.     Homebridge's trade secret information is not generally known to, and not readily ascertainable by proper means by, third parties (including but not limited to Martinson's and Naya's new employer, Loan Depot), and therefore derives independent economic value.

40.     Homebridge does not share its trade secret information with the general public, and, in fact, has made efforts to maintain its secrecy.  In the *Confidentiality, Non-Disclosure, and Non-Solicitation Agreements* that Homebridge entered into with Martinson on April 27, 2019, and with Naya on April 18, 2019, Homebridge included comprehensive trade secret/confidentiality provisions.

41.     The fact of the employment of Martinson as Loan Depot's Area Manager for Hawaii and Naya as Loan Depot's Branch Manager for Hawaii, in and of itself "threatens" misappropriation of Homebridge's trade secrets.  Under Haw. Rev. Stat. § 482B-2, "misappropriation" means, among other things, "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means[.]"

42.     Under Haw. Rev. Stat. § 482B-2, "misappropriation" also means "[d]isclosure or use of a trade secret of another without express or implied consent

by a person who . . . [a]cquired [it] under circumstances giving rise to a duty to maintain its secrecy or limit its use[.]"

43.     Each of Martinson and Naya acquired all of Homebridge's trade secrets under circumstances giving rise to a duty to maintain or limit the use of such trade secrets, including but not limited to use of that information to benefit himself, herself, or their new employer, Loan Depot.

44.     Threatened misappropriation is inferred where an employee is hired from one corporation to another in a manner that makes it virtually "inevitable" that the employee will disclose his former employer's confidences to his new employer.

45.     A corporate plaintiff may prove a claim of inevitable (*i.e.*, threatened) trade secret misappropriation by demonstrating that the employee's new employment will inevitably lead him to rely on the Plaintiff's trade secrets.  In situations such as the one involving Martinson and Naya, a significant danger of an inadvertent disclosure of Homebridge's trade secrets exists simply by the fact that Martinson and Naya have switched jobs in a highly competitive environment and has gone from being senior executives of one competitor to being the senior executives of another competitor in the same market.

46.     Martinson's and Naya's disclosure of Homebridge's trade secrets need not necessarily be intentional or malicious to give rise to an enjoinable threatened misappropriation of trade secrets under Haw. Rev. Stat. Chapter 482B.

47.     Even if they attempted to act in the best of good faith, it will be impossible for Martinson and Naya to prevent their knowledge of Homebridge's trade secrets from infiltrating his work with Loan Depot.  Indeed, as Loan Depot's two most senior employees in Hawaii, Martinson and Naya each now owes duties of loyalty, faith and full disclosure of all of their knowledge of the Hawaii mortgage origination and loan industry, including but not limited to their specialized market knowledge (which are Homebridge's trade secrets) to Loan Depot, thereby creating an "inevitable" and incurable threat of both threatened and actual misappropriation of Homebridge's trade secrets by Martinson and Naya (and Loan Depot).

48.     In order to obtain injunctive relief against Martinson and/or Naya, Homebridge need not show any malicious intent on the part of Martinson and/or Naya to facilitate and benefit from the misappropriation of Homebridge's trade secrets.

49.     Inevitable disclosure of trade secrets by former senior-level employees such as Martinson and Naya may be found based upon any of the following factors:

13

(a)     A high degree of similarity between Martinson's and Naya's former and current positions; and

(b)     the value of the information; and

(c)     the degree of competition between Homebridge and Martinson's and Naya's new employer, Loan Depot; and

(d)     Loan Depot's efforts, or lack thereof, to safeguard Homebridge's trade secrets.

50.     In the present instance, all of those factors are satisfied:  Martinson and Naya have been placed in an identical or highly similar jobs at Loan Depot, where they will not only be performing the same type of work but also have been deployed to service and market to the same mortgage customers with whom they worked with while they were employees of Homebridge; Homebridge's information is valuable in that it relates to Homebridge's proprietary knowledge of customer's mortgage needs and pricing arrangements, and the disclosure of such information would eliminate Homebridge's competitive advantage in the industry; there is a high degree of competition between Homebridge and Loan Depot to the extent that they provide similar mortgage origination and loan services, serve the same market, and compete for the same mortgage origination and loan contracts. Accordingly, it appears that, because Loan Depot has employed Martinson and Naya in highly similar positions and used Martinson and Naya (very rapidly and successfully) to solicit Homebridge's employees and customers, there has been and will continue to be an inevitable disclosure of Homebridge's trade secrets.

14

51.     Martinson's and Naya's wrongful conduct entitles Homebridge to injunctive relief, as well as general and special damages in amounts to be proven at trial.

## COUNT III
## (Breach of Fiduciary Duty/Duty of Loyalty)

52.     Homebridge realleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 51 above.

53.     Based upon their prior employment relationship with Homebridge, Martinson and Naya owed and continue to owe Homebridge a fiduciary duty and/or duty of loyalty.  This duty includes a duty to not solicit or encourage Homebridge's employees and/or customers to end their employment and/or mortgage origination and loan relationships with Homebridge and to switch their employment or business relationships to Loan Depot.

54.     Martinson and Naya breached this duty by, *inter alia*, soliciting and encouraging multiple Homebridge employees and customers to end their employment or mortgage loan relationships with the Homebridge and to switch those employment or business relationships to Loan Depot.

55.     Martinson's and Naya's wrongful conduct entitles Homebridge to injunctive relief, as well as damages in amounts to be proven at trial.

## COUNT IV
### (Breach of Contract - Solicitation of Employees)

56.     Homebridge realleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 55 above.

57.     Pursuant to their *Confidentiality, Non-Disclosure, and Non-Solicitation Agreements,* Defendant Martinson and Naya were under a contractual obligation, for not less than one year following the termination of their employment with Homebridge, to not "on behalf of herself/himself or on behalf of any other person, firm, or entity, *directly or indirectly* solicit any of Homebridge's Associates with whom Associate worked in the six (6) months preceding Associate's termination, to leave the Employer or form or join another entity." (emphasis added).

58.     Defendant Martinson and Naya breached these contractual obligations by soliciting and encouraging Homebridge employees Clint Lacaden, Shane Irish, Todd Niizawa, Jenna Lum, Randy Miller, Shana Antolin, Shirely Medeiros, Kim Kawachi, Lei Agpoon, and Sandy Rice to terminate their employment with Homebridge for the purposes of becoming employees of Homebridge's competitor, Loan Depot.  Said solicitation and encouragement by Defendant Martinson and Naya of Clint Lacaden, Shane Irish, Jenna Lum, Randy Miller, Shana Antolin, Shirely Medeiros, Kim Kawachi, Lei Agpoon, and Sandy Rice was successful and all of those Homebridge employees have resigned their employment with

16

Homebridge and have become Loan Depot employees, competing with Homebridge.

59.     Defendant Martinson's and Naya's wrongful conduct entitles Homebridge to injunctive relief, as well as damages in amounts to be proven at trial.

## COUNT V
### (Unfair Competition/Interference With Business Relations/Mass Solicitation of Employees)

60.     Homebridge realleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 59 above.

61.     Defendant Martinson and Naya each was under a contractual obligation, for not less than one year following the termination of their employment with Homebridge, to not "on behalf of herself/himself or on behalf of any other person, firm, or entity, *directly or indirectly* solicit any of Homebridge's Associates with whom Associate worked in the six (6) months preceding Associate's termination, to leave the Employer or form or join another entity." (emphasis added).

62.     It is settled law that an *en masse* raiding of employees from one company to another, thereby leaving the first company with inadequate operational capacity to properly carry on its business, is impermissible.  *See e.g., Alexander & Alexander Benefits Serv., Inc. v. Benefit Brokers & Consultants, Inc.*, 756 F. Supp.

17

1408 (D. Ore. 1991) (plaintiff company "will suffer irreparable injury in the form of its inability to fairly compete with [the defendant company] because of the misappropriation and continuing misuse of [plaintiff company's] confidential information by the defendants and because of the continuing injury to [plaintiff company's] business caused by the defendants' raid of its workforce and client base").

63.    In the present instance, it cannot be disputed that Martinson and Naya, *within a highly-concentrated period of time*, made offers of employment to and/or hired a substantial portion of Homebridge's key mortgage origination and loan experts in Hawaii; that Martinson and Naya did so with knowledge that Homebridge heavily depended upon these employees to fulfill Homebridge's customer contracts; and that Martinson and Naya did so with knowledge that these employees have unique and valuable relations with Homebridge's mortgage origination and loan customers and also have confidential and/or proprietary knowledge of the nature of Homebridge's mortgage origination and loan customers (including customer needs and pricing arrangements).  Furthermore, the timing of the offers and resignations -- all within a less than 60-day period-- has effectively left Homebridge with no meaningful opportunity to hire and train sufficient replacement mortgage industry experts.

64.     Accordingly in addition to breaching their contractual obligation by soliciting and encouraging Homebridge employees Clint Lacaden, Shane Irish, Todd Niizawa, Jenna Lum, Randy Miller, Shana Antolin, Shirely Medeiros, Kim Kawachi, Lei Agpoon, and Sandy Rice to terminate their employment with Homebridge for the purposes of becoming employees of Homebridge's competitor, Loan Depot, Martinson and Naya engaged in unfair competition and interference with Homebridge's business relations and operations by improperly "raiding" Homebridge's key employees on behalf of themselves and Loan Depot.

65.     Defendant Martinson's and Naya's wrongful conduct entitles Homebridge to injunctive relief, as well as damages in amounts to be proven at trial.

## COUNT VI
### (Breach of Fiduciary Duty/Duty of Loyalty/
### Mass Solicitation of Employees)

66.     Homebridge realleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 65 above.

67.     Even in the absence of a contractual non-solicitation-of-employees provision, Martinson and Naya -- as employees of Homebridge -- had an ongoing fiduciary duty to not to solicit the employment of Homebridge's current employees.  *See e.g., Frederick Chusid & Co. v. Marshall Leeman & Co., Inc.,* 279 F. Supp. 913, 918 (S.D.N.Y. 1968) ("The individual defendants who had been

employed by [plaintiff company] owed a common law duty of loyalty to their employer, and this duty continued after the termination of the relationship. Soliciting employees to leave their employer constitutes a breach of this good-faith duty") (citation omitted).  Martinson and Naya breached their duty to Homebridge by soliciting at least Clint Lacaden, Shane Irish, Todd Niizawa, Jenna Lum, Randy Miller, Shana Antolin, Shirely Medeiros, Kim Kawachi, Lei Agpoon, and Sandy Rice to become employees of Loan Depot.

68.    Defendant Martinson's and Naya's wrongful conduct entitles Homebridge to injunctive relief, as well as damages in amounts to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Homebridge prays for the following relief:

(1)    Entry of a temporary restraining order, preliminary injunction, and permanent injunction that:

> (i)    Enjoins Martinson and Naya for not less than one (1) year from entry of the Court's order from performing or supervising the performance of any mortgage loan services for any ex-Homebridge customer who have transferred their mortgage loan business to Loan Depot at any time commencing August 13, 2019;

> (ii)    Enjoins Martinson and Naya or any person or entity acting in concert with him, including but not limited to their current employer, Loan Depot, from disclosing or misappropriating for their own use or benefit, any of Homebridge's trade secrets or other

confidential and proprietary information in violation of either the Defend Trade Secrets Act and/or Martinson's and Naya's various contractual commitments and restrictions in favor of Plaintiff Homebridge and/or in violation of Haw. Rev. Stat. Chapter 482B;

(iii)   Requires Martinson and Naya to return to Homebridge, within 24 hours, all property, documents, files, reports, and/or other materials that Martinson and Naya have in their possession, custody, or control that were obtained from Homebridge;

(iv)   Prohibits Martinson and Naya from destroying any documents of any kind, whether in written or electronic form, that pertain to, relate to, or refer to, in any way to Homebridge and Loan Depot's employment of Martinson and Naya and/or the transfer of Homebridge's employees and/or customers from Homebridge to Loan Depot;

(v)   Enjoins Martinson and Naya, or Loan Depot on Martinson and Naya's behalf, from soliciting, encouraging, or attempting to solicit or induce employees of Homebridge to terminate his or her employment with Homebridge and go to work for any other entity, including Loan Depot; and

(vi)   Enjoins Martinson and Naya and their current employer, Loan Depot, from all actions in violation of Martinson and Naya's various contractual commitments and restrictions in favor of Plaintiff Homebridge;

(vii)   Enjoins Martinson and Naya in all such other and further ways necessary to bring Martinson and Naya into full and complete compliance and conformance with his contractual agreements with Homebridge and to ensure no further violations of the Defend Trade Secrets Act, Haw. Rev. Stat. Chapter 482B, and to cure all past violations of the Defend Trade Secrets Act and Haw. Rev. Stat. Chapter 482B.

21

(2)    An award of general and special compensatory damages in an amount to be determined at trial;

(3)    An award of punitive damages within constitutional limitations;

(4)    An award of Homebridge's reasonable attorneys' fees and costs incurred in connection with this litigation and/or in assumpsit; and

(5)    Such further relief as the Court deems just and equitable.

DATED:  Honolulu, Hawaii, October 25, 2019.

/s/ Andrew L. Pepper
ANDREW L. PEPPER
NICOLE K. HUDSPETH
Attorneys for Plaintiff
Homebridge Financial Services, Inc.

4832-9137-0923, v. 1